IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BETTE CONAWAY,

     Plaintiff,

v.

GWINNETT COUNTY, GEORGIA;
GRANT GUESS, Individually,

     Defendants.

CIVIL ACTION NO.

1:16-CV-01418-AT-CMS

## **FINAL REPORT AND RECOMMENDATION**

This matter is before the Court on the Motion for Summary Judgment filed by Defendant Gwinnett County, Georgia and Defendant Grant Guess (collectively, "Defendants"). [Doc. 72]. In this case, Plaintiff Bette Conaway, a current and long-time employee of Defendant Gwinnett County (the "County"), alleges that she was not selected to be a Construction Manager for the County's Parks and Recreation division because she is a woman. For the reasons discussed below, I recommend that Defendants' Motion for Summary Judgment [Doc. 72] be granted.

# I.    <u>FACTS</u>[1]

Plaintiff is a current employee of the County in its Parks and Recreation division, and she began working for the County in 1986.  [Video Deposition of Bette Ann Conaway ("Pl. Dep.") 78; Declaration of Bette Conaway dated 10/12/2017 ("Pl. Decl.") ¶ 2].  The Parks and Recreation division, which is a division within the County's Community Services Department, is comprised of two sections: the Operations and Maintenance section (the "O&M section"), which handles day-to-day operations and maintenance; and the Planning and Project Administration section (the "Project Administration section"), which manages construction projects.  [Pl. Dep. 98-100].  Plaintiff currently works in the Project Administration section as a "Planner III," coordinating the work of contractors, managing projects, and handling the associated paperwork.  [Pl. Dep. 86-87, 99-100, 112-18; Pl. Decl. ¶¶ 2, 4].  In this capacity, Plaintiff has worked on thirty-seven sites, often working on multiple projects at the same time.  [Deposition of Grant Guess ("Guess Dep.") 319-20; Pl. Decl. ¶ 6].  Defendant Grant Guess is also

---

[1]   This fact statement is for the purpose of summary judgment only, and the facts contained herein have been drawn from the competent evidence presented in connection with the summary judgment filings.  In conformity with the instructions from the United States Supreme Court, I have construed the facts in the light most favorable to Plaintiff, the non-moving party, and I have drawn all inferences in Plaintiff's favor.  <u>See</u> <u>Bd. of Educ. v. Pico</u>, 457 U.S. 853, 863 (1982); <u>Ave. CLO Fund, Ltd. v. Bank of Am., N.A.</u>, 723 F.3d 1287, 1294 (11th Cir. 2013).

a long-time County employee, having worked for the County for more than thirty-three years, and he has been the Division Director for the Project Administration section since October 1997.  [Guess Dep. 5; Pl. Dep. 100-01; Declaration of Elizabeth Bailey ("Bailey Decl.") ¶ 3].

In March 2013, the County advertised a job opening for the position of Construction Manager within the Project Administration section that came open after the previous Construction Manager retired.  [Guess Dep. 56, 141, 145, Ex. 5; Bailey Decl. ¶ 5].  The minimum qualifications for this position stated in the job description were: (1) a bachelor's degree in construction management, civil engineering, landscape architecture, or a closely related field; (2) at least three years of construction management experience; and (3) a valid driver's license. [Guess Dep. 141-42, Ex. 5].  According to the County's "Class Specification Title" for the Construction Manager position, the position requirements included, among other things, supervision and evaluation of employees as well as communication and interpersonal skills as applied to interactions with co-workers, supervisors, and the general public.  [Id. at Ex. 4].  Mr. Guess testified that the Construction Manager was responsible for managing large-scale construction projects, which Mr. Guess considered to be projects costing more than $2 million.  [Guess Dep. 125-29, 247, 317, 320-24; Def. Resp. to Int. 4, pp. 2-3].  Mr. Guess also testified

that because the Construction Manager works alongside many different people, he sought a candidate who possessed good communication skills and the ability to get along well with others.  [Guess Dep. 401-03; Def. Resp. to Int. 4, pp. 2-3].

It is undisputed that Mr. Guess was responsible for interviewing candidates and making a hiring recommendation with respect to the vacant Construction Manager position, but the final decision had to be approved by Philip Hoskins, the Director of the Community Services Department and Mr. Guess's direct supervisor at that time.  [Guess Dep. 66, 70-71; Declaration of Philip Hoskins ("Hoskins Decl.") ¶¶ 2-3; Bailey Decl. ¶¶ 6-7].

According to Mr. Guess, deep-seated and long running tensions existed between the O&M and Project Administration sections of the Parks and Recreation division.  [Guess Dep. 58-66].  As such, he wanted a candidate who could act as an intermediary and who could get along with the O&M section's managers, Tina Fleming and David Clark.  [Id. at 63-66, 401-05; Def. Resp. to Int. 4, p. 4].

Plaintiff applied for the Construction Manager position in 2013, was granted an interview, but was not selected.  [Guess Dep. 146, 151].  Glenn Boorman (the person who ultimately received the position in 2014) also applied for the Construction Manager position in 2013.  [Id. at 148].  He was not interviewed at that time.  [Id.].  According to Mr. Guess, he was not certain in 2013 whether Mr.

Boorman's professional experiences in golf course design would transfer to parks and recreation. [Id. at 148-49, 235]. In 2013, Mr. Guess interviewed Russell Small, with whom Mr. Guess was familiar because they previously had worked together on a County program management contract, and he offered Mr. Small the position, but Mr. Small declined the offer. [Id. at 145-47]. Thereafter, Mr. Guess offered the position to another candidate, Lee Croy, who also declined the offer. [Id. at 147-48]. Although Mr. Guess did not interview Mr. Croy for the Construction Manager position, he was familiar with Mr. Croy because they had worked together on an existing County project. [Id.]. Ultimately, the Construction Manager position was not filled at that time. [Id. at 145-48; Bailey Decl. ¶ 5].

The County re-posted the Construction Manager position in February 2014 and made no changes to the requisite minimum qualifications: (1) a bachelor's degree in construction management, civil engineering, landscape architecture, or closely related field; (2) three years of construction management experience; and (3) a valid driver's license. [Guess Dep. 141-42, Ex. 6; Bailey Decl. ¶ 5]. During the 2014 hiring process, Mr. Guess selected six candidates (two women and four men) to interview, including Plaintiff and Mr. Boorman. [Guess Dep. 192-94, 282-83, Exs. 8-10; Pl. Dep. 230-31; Bailey Decl. ¶ 6]. As noted above, Mr. Boorman, a

male, was ultimately selected for the Construction Manager position.  [Hoskins Decl. ¶ 9; Bailey Decl. ¶ 6].

Mr. Boorman holds a bachelor's degree in landscape architecture. [Deposition of Glenn Boorman ("Boorman Dep.") 10, Exs. 7, 9; Def. Resp. to Int. 4, p. 3].  He also has twenty years of construction management experience from his position as Lead Designer and Project Manager for Griffiths & Associates, an international golf course development company.  [Boorman Dep. 9, 23-24, Exs. 7, 9; Guess Dep. 235; Def. Resp. to Int. 4, pp. 3-4].  In that role, Mr. Boorman managed the design and construction of golf courses around the world, ranging in cost from $2 million to $15 million.  [Boorman Dep. 32-34, 77-79; Def. Resp. to Int. 4, pp. 3-4].  In his prior positions, Mr. Boorman had directly supervised multiple employees and had interacted with various project stakeholders, including clients, contractors, subcontractors, government entities, and employees. [Boorman Dep. 23-25, 32-34; Def. Resp. to Int. 4, pp. 3-5].

When Mr. Guess interviewed Mr. Boorman, Mr. Guess inquired about whether Mr. Boorman's experience designing golf courses would translate to the Parks and Recreation division.  [Guess Dep. 248-49].  During the interview, Mr. Boorman highlighted his conflict resolution skills, including his experience serving as a mediator between architects and contractors at various points during projects

and his ability to get along with people to effectively manage a project. [Boorman Dep. 43-46]. Mr. Guess also contacted Mr. Boorman's references, who confirmed that Mr. Boorman was well-liked, a good communicator, and an excellent supervisor. [Guess Dep. 265; Def. Resp. to Int. 4, p. 5].

Plaintiff's work experience with the County's Parks and Recreation division has consisted primarily of smaller-scale projects, such as resurfacing asphalt parking lots and trails, with only one project exceeding $2 million in cost. [Pl. Dep. 50-52, Ex. 3; Guess Dep. 317, 338; Def. Resp. to Int. 4, p. 5]. Plaintiff also has had experience supervising crews. [Pl. Dep. 73-74; Guess Dep. 201-02].

Mr. Guess testified that after conducting the interviews, he believed Mr. Boorman's experience in the design and construction of golf courses was highly applicable to the job of Construction Manager, and that Mr. Boorman's personality appeared to be a good fit for the Construction Manager position. [Guess Dep. 243-44, 249, 252-55, 405-07; Def. Resp. to Int. 4, p. 4].

Mr. Guess also testified that he did not believe Plaintiff was as well-qualified or suited for the position because she lacked good communication skills—particularly with management personnel—and because he had received complaints from numerous people over the years about negative experiences working with her. [Guess Dep. 403-07, 423-24; Def. Resp. to Int. 4, pp. 5-11].

7

Mr. Guess also did not believe Plaintiff could effectively supervise employees or work alongside management as the Construction Manager.  [Guess Dep. 213-16, 404-06; Def. Resp. to Int. 4, pp. 10-11].  Mr. Guess testified that he had similar concerns about two male applicants—Rex Schuder and Mark Patterson—who he also considered to be not a good fit for the Construction Manager position due to their personalities, even though they each had roughly thirty years of experience with the County.  [Guess Dep. 407-09].

After Mr. Guess completed the interviews, he prepared a memorandum addressed to Mr. Hoskins, the Department Director, recommending that Mr. Boorman be selected for the Construction Manager position.  [Deposition of Philip Hoskins ("Hoskins Dep.") 33; Hoskins Decl. ¶ 3].  As the Department Director, Mr. Hoskins was responsible for making the final hiring decision with respect to the Construction Manager position.  [Hoskins Decl. ¶¶ 3, 9; Bailey Decl. ¶¶ 6-7].

Mr. Hoskins considered Mr. Guess's recommendation that Mr. Boorman be hired, and he also independently reviewed the background, qualifications, and experience of all the candidates.  [Hoskins Dep. 34-36, 40; Hoskins Decl. ¶¶ 4-9].  Mr. Hoskins testified that based on his personal experiences working together with Plaintiff for eighteen years, he did not believe Plaintiff was a good fit for the position.  [Hoskins Decl. ¶ 7].  Mr. Hoskins ultimately concluded that Mr.

Boorman was well-qualified and a good fit for the Construction Manager position, and he approved Mr. Guess's recommendation to select Mr. Boorman for the position.  [Hoskins Dep. 34-36, 40; Hoskins Decl. ¶¶ 4-6, 9].

On April 29, 2016, Plaintiff initiated this lawsuit against Defendants by filing a three-count Complaint, alleging: sex discrimination under the Equal Protection Clause of the 14th Amendment to the United States Constitution via 42 U.S.C. § 1983 ("Section 1983") against the County and Mr. Guess in both his official and individual capacities (Count One); sex discrimination against the County under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII") (Count Two); and age discrimination against the County under the Age Discrimination in Employment Act (Count Three).  [Doc. 1 ("Compl.") ¶¶ 25-47].  Thereafter, the Court dismissed Plaintiff's official capacity claim against Mr. Guess, and the parties stipulated to the dismissal with prejudice of Plaintiff's Count Three age discrimination claim.  [Docs. 27, 59].  Thus, the only claims remaining are Plaintiff's Title VII sex discrimination claim against the County, and her Section 1983 claims against the County and Mr. Guess in his individual capacity.

After the close of the discovery period, Defendants filed the instant motion for summary judgment.  I held oral argument on December 13, 2017.  [Doc. 100].

The motion is now fully briefed and ripe for consideration.  [Docs. 72, 81-82, 89-90, 95-96].

## II.   <u>LEGAL STANDARD</u>

### A.   Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56; <u>Ezell v. Wynn</u>, 802 F.3d 1217, 1222 (11th Cir. 2015).  The moving party bears the initial burden of showing the court "the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact[ ]" and "an absence of evidence to support the nonmoving party's case."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 325 (1986); <u>U.S. v. Four Parcels of Real Prop.</u>, 941 F.2d 1428, 1437-38 (11th Cir. 1991) (en banc).  "[T]he substantive law will identify which facts are material."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  If the moving party fails to discharge this initial burden, the motion must be denied.  <u>See</u> <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1116 (11th Cir. 1993).

If the burden is met, however, the non-moving party must then "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue

for trial.'" <u>Celotex Corp.</u>, 477 U.S. at 324 (citation omitted).  "A 'mere scintilla' of evidence is insufficient; the non-moving party must produce substantial evidence to defeat a motion for summary judgment."  <u>See</u> <u>Garczynski v. Bradshaw</u>, 573 F.3d 1158, 1165 (11th Cir. 2009) (citation omitted).  Mere conclusions and factual allegations unsupported by evidence are insufficient to survive a motion for summary judgment.  <u>See</u> <u>Ellis v. England</u>, 432 F.3d 1321, 1326 (11th Cir. 2005). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment."  <u>Miranda v. B & B Cash Grocery Store, Inc.</u>, 975 F.2d 1518, 1534 (11th Cir. 1992) (citation omitted).

## B.    Legal Framework for Discrimination Claims

Title VII makes it unlawful for an employer to discriminate "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Similarly, the Equal Protection Clause of the 14th Amendment to the United States Constitution prohibits unlawful sex discrimination in public employment, and Section 1983 creates a private cause of action for such constitutional violations.  <u>See</u> <u>Marshall v. Mayor & Alderman of City of Savannah, Ga.</u>, 366 F. App'x 91, 97 (11th Cir. 2010) (citation omitted). Where the claims are based on the same set of facts, Title VII and Section 1983

claims have the same elements, and such claims are evaluated using the same framework.  See Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1275 (11th Cir. 2008); Cheatham v. DeKalb Cty., Ga., 682 F. App'x 881, 889 (11th Cir. 2017) ("When § 1983 is used as a parallel remedy for violation of Title VII, courts employ the same elements and standards of proof to analyze both claims.").

A plaintiff may prove disparate treatment through the introduction of either direct or circumstantial evidence.  See Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1085 (11th Cir. 2004).  Direct evidence is "evidence, that, if believed, proves [the] existence of [a] fact without inference or presumption."  Id. at 1086 (citation omitted).  Plaintiff does not argue there is direct evidence of discrimination present in the record.  Instead, Plaintiff relies on circumstantial evidence to support her sex discrimination claims, which means the Court must conduct an analysis under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Champ v. Calhoun Cty. Emergency Mgmt. Agency, 226 F. App'x 908, 909-10 (11th Cir. 2007).

Under the McDonnell Douglas framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination.  See Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001).   Once a plaintiff has established a prima facie case, the employer must articulate a legitimate, non-discriminatory reason for its actions.  Id.  The employer "need not persuade the

court that it was actually motivated by the proffered reasons." <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 254 (1981); <u>see also</u> <u>Wilson</u>, 376 F.3d at 1087. Rather, if the employer can give an appropriate explanation, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's explanation is merely a pretext for discrimination.  <u>See</u> <u>Wilson</u>, 376 F.3d at 1087.

## III.   <u>DISCUSSION</u>

Plaintiff contends that she was the victim of sex discrimination when the County hired Mr. Boorman, rather than Plaintiff, for the Construction Manager position.  Defendants argue, among other things, that they are entitled to summary judgment because: (1) Plaintiff has not made out a prima facie case of discrimination because she was not qualified for the Construction Manager position; and (2) Plaintiff has not come forward with evidence to show that Defendants' stated reasons for selecting Mr. Boorman, rather than Plaintiff, were actually a pretext for discrimination.

**A.   Plaintiff's Sex Discrimination Claims Against the County (Counts One and Two)**

**1.   Plaintiff's Prima Facie Case**

To establish a prima facie case of discriminatory failure-to-promote under both Title VII and Section 1983, a plaintiff must establish that: "(1) she is a member of a protected class; (2) she was qualified and applied for the promotion;

(3) she was rejected despite her qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted." See Wilson, 376 F.3d at 1089 (citation omitted); Clark v. S. Broward Hosp. Dist., 601 F. App'x 886, 894 (11th Cir. 2015). With respect to Plaintiff's prima facie case, Defendants do not dispute that Plaintiff is a member of a protected class, that she applied for the Construction Manager position, that she was not selected for the position, or that a male applicant was selected for the position. [Doc. 81-1 at 10]. Rather, Defendants argue only that Plaintiff cannot show that she was qualified for the position. [Id. at 10-12]. Specifically, Defendants argue that Plaintiff lacked the leadership style that Defendants preferred.

The job posting for the Construction Manager position states that the minimum qualifications for the position are: (1) a bachelor's degree in construction management, civil engineering, landscape architecture, or a closely related field; (2) three years of related construction management experience; and (3) a valid driver's license. [Guess Dep. 141-42, Ex. 6]. It is undisputed that Plaintiff met these criteria. Plaintiff holds a degree in urban and environmental planning and a minor in landscape architecture [Pl. Dep. 211-12]; Plaintiff has twenty-eight years of experience in the Parks and Recreation division and has worked for the County since 1986 [Pl. Dep. 78; Guess Dep. 235, 291]; the job duties for Plaintiff's current

position overlap with those of the Construction Manager position [Guess Dep. 103-24, 125-28, 236, Ex. 4; Pl. Dep. 112-20; Pl. Decl. ¶ 4]; and Plaintiff had a valid driver's license at the time she submitted her application.

Defendants argue that Plaintiff was not qualified because she lacked the leadership style they preferred and did not have supervisory or large-scale project experience.   [Doc. 81-1 at 10-12].   This argument, however, focuses on Defendants' subjective evaluation of Plaintiff, which has no place in the prima facie case analysis.  As the Eleventh Circuit has explained:

> [T]o demonstrate that he was qualified for the position, a Title VII plaintiff need only show that he or she satisfied an employer's objective qualifications.   The employer may then introduce its subjective evaluations of the plaintiff at the later stages of the *McDonnell Douglas* framework.
>
> . . .
>
> If we were to hold an employer's subjective evaluations sufficient to defeat the prima facie case, the court's inquiry would end, and plaintiff would be given no opportunity to demonstrate that the subjective evaluation was pretextual.   Such a blind acceptance of subjective evaluations is at odds with the intent that underlies the *McDonnell Douglas* framework.

Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 769 (11th Cir. 2005); Champ, 226 F. App'x at 911 ("[P]roof of relative qualifications is not part of the *prima facie* analysis.").

Because Plaintiff met the objective qualifications for the Construction Manager position as specified in the job posting, I conclude that she has satisfied her initial burden of establishing a prima facie case of sex discrimination.

## 2. Defendants' Legitimate, Non-Discriminatory Reason

The burden now shifts to Defendants to articulate a legitimate, non-discriminatory reason for selecting Mr. Boorman rather than Plaintiff for the Construction Manager position. An employer's burden to articulate a non-discriminatory reason for failing to promote an employee is a burden of production, not of persuasion. See Burdine, 450 U.S. at 254. This burden has been characterized as "exceedingly light." See Vessels, 408 F.3d at 769-70 (citation omitted). So long as the employer articulates "a clear and reasonably specific" non-discriminatory basis for its actions, it has discharged its burden of production. Id. at 770 (citing Burdine, 450 U.S. at 254-55).

Here, Defendants state that their reason for selecting Mr. Boorman for the Construction Manager position was that Mr. Boorman was the more qualified candidate. [Doc. 81-1 at 12-15]. Defendants have provided undisputed evidence that Mr. Boorman possessed substantial experience and a strong background in a supervisory role; had twenty years of construction management experience with an international golf course development company; had extensive experience with

16

large-scale projects exceeding \$2 million in costs; had experience supervising multiple direct reports and interacting with various project stakeholders; and possessed the communication and leadership skills that Defendants were looking for in a Construction Manager.  [Guess Dep. 243-44, 252-55, 265, 405-07].  As such, Defendants have met their "exceedingly light burden" of articulating a legitimate, non-discriminatory reason for selecting Mr. Boorman, rather than Plaintiff, for the Construction Manager position.  See Walker v. NationsBank of Fla. N.A., 53 F.3d 1548, 1563 (11th Cir. 1995).

### 3.    Plaintiff's Pretext Evidence

Under the McDonnell Douglas framework, the burden now shifts back to Plaintiff to demonstrate that Defendants' articulated reasons are pretext for discrimination.  See Vessels, 408 F.3d at 771; see also Laincy v. Chatham Cty. Bd. of Assessors, 520 F. App'x 780, 781 (11th Cir. 2013).  To do so, Plaintiff may reveal "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [Defendants'] proffered legitimate reasons for [their] action[s] that a reasonable factfinder could find them unworthy of credence."  Vessels, 408 F.3d at 771 (internal quotations and citations omitted).  However, a reason is not pretext for discrimination "unless it is shown *both* that the reason was false, *and* that discrimination was the real reason."  Brooks v. Cty. Comm'n of Jefferson

Cty., 446 F.3d 1160, 1163 (11th Cir. 2006) (citation omitted) (emphases in original).  A plaintiff cannot establish pretext by simply demonstrating facts that suggest discrimination; she must specifically respond to the employer's explanation and rebut it.  See Crawford v. City of Fairburn, Ga., 482 F.3d 1305, 1309 (11th Cir. 2007).

Plaintiff argues that the following evidence supports an inference of sex-based discrimination in this case: (1) Plaintiff's superior qualifications over those of Mr. Boorman; (2) Mr. Guess's alleged disingenuous justifications for selecting Mr. Boorman rather than Plaintiff; (3) the unwarranted nature of the complaints made against Plaintiff that led to Mr. Guess's conclusion that she had poor communication skills and lacked the ability to get along well with others; (4) Mr. Guess's decision to offer the Construction Manager position to two male applicants in 2013 (both of whom declined); and (5) Mr. Guess's comments regarding "diversity" to Plaintiff during her interview.  [Doc. 89 at 10-30].  I will address each of these points in turn.

### a.    Plaintiff's Qualifications Compared to Mr. Boorman's

Plaintiff first attempts to establish pretext by arguing that she was more qualified than Mr. Boorman for the Construction Manager position and that "no reasonable person could have chosen Boorman over [Plaintiff] based upon their

relative qualifications."  [Doc. 89 at 10-11].  A plaintiff, however, cannot prove
pretext "by simply arguing or even by showing that she was better qualified than
the [person] who received the position she coveted."  <u>Brooks</u>, 446 F.3d at 1163
(citation omitted).  Rather, a plaintiff must show that the disparities between the
successful applicant's and her own qualifications were "of such weight and
significance that no reasonable person, in the exercise of impartial judgment, could
have chosen the candidate selected over the plaintiff for the job in question."
<u>Higgins v. Tyson Foods, Inc.</u>, 196 F. App'x 781, 783 (11th Cir. 2006).  Plaintiff
has not met this standard.

It is undisputed that Mr. Boorman possessed the educational background
necessary for the position.  [Boorman Dep. 10, Exs. 7, 9; Pl. Dep. 212; Def. Resp.
to Int. 4, p. 3].  Mr. Boorman also had twenty years of construction management
experience through his prior position as Lead Designer and Project Manager for an
international golf course development company.  [Boorman Dep. 9, 23, Exs. 7, 9;
Guess Dep. 235; Def. Resp. to Int. 4, pp. 3-4].  Mr. Boorman also had extensive
supervisory experience, having directly supervised multiple employees and
interacted with various project stakeholders, including clients, contractors,
subcontractors, government entities, and employees.  [Boorman Dep. 23-25, 32-34;
Def. Resp. to Int. 4, pp. 3-5].  Plaintiff, on the other hand, had no supervisory

experience other than having partially supervised a construction crew years ago in a different position.  [Pl. Dep. 72-74; Guess Dep. 266-67; Def. Resp. to Int. 4, p. 5].  With respect to large-scale project experience, Mr. Boorman managed the design and construction of golf courses around the world in his prior position, ranging in cost from $2 million to $15 million.  [Boorman Dep. 32-34, 78; Def. Resp. to Int. 4, pp. 3-4].  In contrast, Plaintiff's work experience with the County primarily consisted of smaller-scale projects, which only once exceeded $2 million.  [Pl. Dep. 50-52, Ex. 3; Guess Dep. 317, 338; Def. Resp. to Int. 4, p. 5].

It is also undisputed that Mr. Boorman had experience with conflict resolution, having served as a mediator between architects and contractors at various points during projects.  [Boorman Dep. 43-46].  The evidence showed that Mr. Boorman was able to get along with people to effectively manage a project, and his references confirmed that he was well-liked, a good communicator, and an excellent supervisor.  [Guess Dep. 265; Def. Resp. to Int. 4, p. 5].  Plaintiff presented no evidence to contradict this.  This undisputed evidence shows that it was reasonable for Defendants to select Mr. Boorman, rather than Plaintiff, for the Construction Manager position based on Mr. Boorman's qualifications.

Moreover, Defendants presented undisputed evidence that two of the O&M section's managers told Mr. Guess during the 2014 interview process that they did

not believe Plaintiff would be a good fit for the Construction Manager position because of her negative attitude, inability to get along well with others, and poor communication skills. [Deposition of Tina Fleming ("Fleming Dep.") 7, 9, 17-18, 40-41; Deposition of David Clark ("Clark Dep.") 9, 30-31, 33-34; Guess Dep. 406; Def. Resp. to Int. 4, p. 8]. Again, Plaintiff did not dispute this evidence.

Given the undisputed evidence of Mr. Boorman's qualifications for the position, Plaintiff's evidence regarding her own qualifications is insufficient to defeat Defendants' motion for summary judgment on these claims. Plaintiff has provided no evidence that Defendants' stated reliance on the alleged superior qualifications of Mr. Boorman as the reason for his selection is in reality a mask for sex discrimination. "Absent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext . . . ." Denney v. City of Albany, 247 F.3d 1172, 1185 (11th Cir. 2001). Moreover, the fact that Defendants' decision to select Mr. Boorman was based on Mr. Guess's and Mr. Hoskins's subjective views of the relative qualifications does not invalidate those views or raise the specter of discrimination. "A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its

subjective opinion."  Id. at 1186.  Mr. Guess and Mr. Hoskins provided a sufficiently specific factual basis for their opinions that Mr. Boorman was the more qualified candidate, which is supported by the record evidence, and Plaintiff has not come forward with contrary evidence to show that the decision to select Mr. Boorman was unreasonable or illegitimate in any way.

> **b.   Mr. Guess's Justifications for Selecting Mr. Boorman**

Next, Plaintiff contends that Mr. Guess's stated justifications for selecting Mr. Boorman for the Construction Manager position, rather than Plaintiff, were disingenuous and pretextual.  [Doc. 89 at 11-19].

In an e-mail to the County's Human Resources ("HR") Manager, Mr. Guess stated that there were four specific criteria he was looking for in a candidate for the Construction Manager position: (1) engineering license or experience; (2) managerial experience, with specific experience over project managers or construction managers; (3) experience in overseeing park or "park like" projects; and (4) Gwinnett County experience or governmental experience.  [Guess Dep. Ex. 13].  Plaintiff first argues that she can show pretext because Mr. Guess "did not abide by his own self-professed search criteria[,]" because with respect to the third and fourth listed factors, Plaintiff possessed more experience than Mr. Boorman. [Doc. 89 at 11].  Plaintiff argues that if Mr. Guess had honestly wanted candidates

with those qualifications, he would have selected her for the position. The e-mail to HR, however, was in response to the following question: "How did you determine what candidates to interview?" and was not a finite list of the determinative factors for the County's ultimate hiring decision. [Guess Dep. Ex. 13]. The evidence shows that Mr. Guess did, in fact, consider the aforementioned four criteria in determining who to interview for the Construction Manager position, and he did select Plaintiff for an interview. The fact that he ultimately considered additional criteria—including supervisory and large-scale project experience as well as personality and leadership style—in making his final recommendation does not make his stated criteria in the e-mail a lie.

Plaintiff next argues that she can show pretext by demonstrating that Mr. Guess thought Mr. Boorman lacked the necessary experience for the position and that Mr. Boorman would face certain challenges as the Construction Manager that Plaintiff would not face. [Doc. 89 at 13]. Plaintiff contends that her extensive experience working on numerous sites and projects, her long-time work within the public sector, and the beliefs of certain of her co-workers that Plaintiff was the most qualified candidate for the Construction Manager position show that Defendants discriminated against her based on her sex.

There is no evidence to support Plaintiff's contention that Defendants thought Mr. Boorman lacked the necessary experience for the position but selected him for the position anyway.  On the contrary, Defendants have specifically articulated the background, experience, and qualities that they believed made Mr. Boorman the best candidate for the position, including his extensive supervisory and large-scale project experience, his ability to work well with others and communicate effectively, and his conflict resolution skills.  Mr. Guess also testified that he believed Mr. Boorman's background in the design and construction of golf courses was highly applicable to the Construction Manager position and that Mr. Boorman's personality was a good fit for the position.  [Id. at 243-44, 249, 405-07].  Plaintiff has not disputed that Mr. Boorman possessed the objective and subjective qualifications that Defendants state they were looking for in a Construction Manager, nor can Plaintiff dispute that Mr. Guess genuinely believed that Mr. Boorman possessed the necessary experience to succeed as a Construction Manager.  Instead, Plaintiff attempts to redirect the Court's attention to her unsupported allegations that Defendants did not select her for the position solely because of her sex.  This is an example of Plaintiff attempting to substitute her own business judgment for that of her employer, which is insufficient to withstand summary judgment.  See Springer v. Convergys Customer Mgmt. Grp.

24

Inc., 509 F.3d 1344, 1350 (11th Cir. 2007) ("We do not sit in judgment of the wisdom of an employer's selection.") (internal quotations and citation omitted); see also Pennington, 261 F.3d at 1267 ("[A] plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason as long as the reason is one that might motivate a reasonable employer."). Ultimately, Plaintiff's arguments are merely conclusory, speculative assertions unsupported by any record evidence.

Finally, Plaintiff argues that Defendants justified Mr. Boorman's selection based on experience that Plaintiff deemed to be "irrelevant"—specifically regarding supervisory experience and large-scale project experience. [Doc. 89 at 15-19]. This argument amounts to Plaintiff simply substituting her own opinion for that of the employer. "A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer." Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000). "[A] plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where . . . the reason is one that might motivate a reasonable employer." Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir. 1997). In this case, Defendants have provided numerous reasons that could motivate a reasonable employer for

selecting Mr. Boorman for the position, in addition to Mr. Boorman's extensive supervisory and large-scale project experience.

### c. Complaints Regarding Plaintiff's Poor Communication Skills and Inability to Get Along Well with Others

Plaintiff also contends that she has demonstrated pretext by presenting evidence to dispute the fact that she had poor communication skills and was not able to get along well with others. [Doc. 89 at 19-30]. Plaintiff cites to evidence that she received positive performance evaluations and feedback regarding her communication skills from her supervisors for years, that certain of her co-workers described Plaintiff in favorable terms, and that she "has done helpful, kind things for her co-workers throughout her decades-long tenure[.]" [Id. at 20-21]. She has not, however, disputed the fact that Mr. Guess received numerous complaints about Plaintiff's attitude, communication skills, and inability to get along well with others from other County managers and employees, contractors, and clients. [Guess Dep. 356, 415-17, 426, 429-33, Ex. 19; Pl. Dep. 171-81, 200, 209-10, Exs. 11-13, 15; Fleming Dep. 10-11, 20-21, 34-35; Clark Dep. 20-23, Exs. 12-13; Deposition of James Cyrus ("Cyrus Dep.") 24-31, 59-61, Ex. 14; Declaration of Stacy Fowler ("Fowler Decl.") ¶ 11; Deposition of Amy Musser ("Musser Dep.") 50; Declaration of Steve Cannon ("Cannon Decl.") ¶¶ 4-12; Def. Resp. to Int. 4, pp. 6-10]. Defendants have come forward with evidence that over the years,

Plaintiff's co-workers and managers made numerous complaints against her. Moreover, Plaintiff has not disputed the fact that two of the key people she would have needed to work with—Tina Fleming and David Clark—both told Mr. Guess in no uncertain terms that they did not believe Plaintiff would be a good fit for the Construction Manager position.  [Fleming Dep. 7, 9, 17-18, 40-41; Clark Dep. 9, 30-31, 33-34; Guess Dep. 406; Def. Resp. to Int. 4, p. 8].

Plaintiff is unable to dispute that any of these complaints were made.  For example, she has not disputed that (1) in May 2013, a contractor complained to Mr. Guess that Plaintiff tried to discourage his company from bidding on a project [Guess Dep. 356, 426; Pl. Dep. 209-10; Def. Resp. to Int. 4, p. 9]; (2) in June and November 2013, Ms. Fleming and O&M section employees complained about Plaintiff's poor communication after Plaintiff scheduled asphalt resurfacing in parks for the same time that run/walk events were scheduled [Fleming Dep. 10-11, 34-35; Guess Dep. 430-33; Pl. Dep. 171-81, Exs. 11-13; Clark Dep. 20-23, Exs. 12-13; Def. Resp. to Int. 4, pp. 6-8]; (3) in April 2014, Ms. Fleming and Jim Cyrus complained that Plaintiff inappropriately yelled at Mr. Cyrus and another employee for allegedly not wearing a hard hat while work was being done at a softball complex [Fleming Dep. 20-21; Pl. Dep. 200, Ex. 15; Guess Dep. 429-30, Ex. 19; Cyrus Dep. 24-31, 59-61, Ex. 14; Fowler Decl. ¶ 11; Musser Dep. 50; Def. Resp.

to Int. 4, p. 9]; and (4) on two prior projects, the Executive Director of the Gwinnett Environmental and Heritage Center complained to Mr. Guess about Plaintiff's behavior, claiming that Plaintiff did not keep him adequately informed, that she was rude to him and his staff, and that she argued with contractors. [Cannon Decl. ¶¶ 4-12; Guess Dep. 415-17; Def. Resp. to Int. 4, p. 10]. Additionally, Plaintiff has not disputed that both of the O&M section's managers—Ms. Fleming and Mr. Clark—informed Mr. Guess that they did not believe Plaintiff would be a good fit for the Construction Manager position based on her negative attitude, difficulty getting along well with others, and poor communication skills. [Fleming Dep. 7, 9, 17-18, 40-41; Clark Dep. 9, 30-31, 33-34; Guess Dep. 406; Def. Resp. to Int. 4, p. 8]. While Plaintiff certainly has a different perspective on how to interpret these facts, she has not shown that any of these facts are untrue or could be a mere pretext for discrimination.

Rather than disputing that these complaints about her were actually made to Mr. Guess, Plaintiff spends several pages of her brief explaining why these incidents were not her fault, were unfair, or were taken out of context. [Doc. 89 at 21-30]. The Eleventh Circuit has explained: "The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." Alvarez v. Royal Atl.

Developers, Inc., 610 F.3d 1253, 1265-66 (11th Cir. 2010).  Here, Mr. Guess testified that he believed Plaintiff would not be a good fit for the Construction Manager position based on the numerous complaints he received about her as well as his personal knowledge of Plaintiff's personality.  Because Plaintiff has presented no actual evidence to dispute Defendants' belief that she had poor communication skills and was unable to get along well with others, she has not created a fact issue of pretext on this basis.

### d.    Mr. Guess's Offer to Two Male Applicants in 2013

Plaintiff also argues that the fact that Mr. Guess "attempted to hire two men outside of the application/interview process [in 2013] instead of offering the position to [Plaintiff]" demonstrates pretext.  [Doc. 89 at 30].  Plaintiff is correct that in 2013, Mr. Guess offered the Construction Manager position to Mr. Small and Mr. Croy, and that both declined the offer.  [Guess Dep. 145-48].  It is also undisputed that the position went unfilled in 2013 until the next year when it was re-posted.[2]  [Id.; Bailey Decl. ¶ 5].  Plaintiff argues that the fact that she, as a female applicant, was not selected, while two male applicants were offered the position, demonstrates gender animus, which could be used, along with other

---

[2]    I note that there is no evidence that Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission about Defendants' decision not to offer her the Construction Manager position in 2013.

evidence, to show pretext.  There is nothing unusual or suspect, however, about the fact that an employer's lead candidates for a position are both men, unless there is additional evidence that female applicants were excluded from consideration. Here, Plaintiff was selected for an interview two times—in 2013 and 2014—but Defendants offered the Construction Manager position to candidates they deemed to be more qualified for the position.   Without more, Plaintiff's conclusory statement that Defendants harbored gender animus is unsupported by the record evidence.  See Moore v. Ala. State Univ., 980 F. Supp. 426, 430 (M.D. Ala. 1997) (citation omitted) ("If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant.").

Plaintiff also argues that pretext can be inferred in this instance based on Defendants' decision to select Mr. Boorman in 2014 despite the fact that Mr. Boorman had not been interviewed for the position in 2013.  [Doc. 89 at 10-11]. Mr. Guess testified that the reason he did not select Mr. Boorman for an interview in 2013 was that he had a more "robust" applicant pool that year, including Mr. Small and Mr. Croy, and Plaintiff has not disputed this assertion.  [Guess Dep. 148-51].   Mr. Guess also explained that he "was not sure at the time how transferable [Mr. Boorman's] golf course design experience would be to park experience[,]" but that during the 2014 interview, Mr. Boorman explained how his

experience was directly relevant and a good fit for the Construction Manager position.  [Id. at 148, 235].  Again, Plaintiff has come forward with no evidence to dispute this assertion, nor has Plaintiff presented case law showing that there is anything improper or suspect about an applicant convincing a prospective employer during an interview that he possesses all the skills that the employer is looking for.

### e.    Mr. Guess's Comments in Plaintiff's Interview

Finally, Plaintiff argues that she can show pretext because Mr. Guess made a "discriminatory comment" during Plaintiff's interview.   [Doc. 89 at 30]. According to Plaintiff, during her interview with Mr. Guess, they discussed the racial, ethnic, and economic diversity within the County.   [Pl. Dep. 245-46]. Plaintiff testified that Mr. Guess then immediately stated that "the diversity and the County workforce was impacting the County's ability to function."  [Id. at 245]. This statement, however, lacks any relation to Plaintiff or her application for the position, because Mr. Guess did not make any comments in the interview about gender or women.  [Id. at 248-49].  Moreover, Plaintiff testified that immediately before Mr. Guess made this comment about diversity impacting the County's efficiency, she and Mr. Guess had been talking about racial, ethnic, and economic diversity, not about gender diversity.  [Id. at 246-48].  Plaintiff's argument that Mr.

31

Guess's statement demonstrates a negative or discriminatory view of women is simply unsupported, when viewed in the context of the entire conversation.

Moreover, even if this mention of "diversity" is considered a derogatory remark, that comment alone is not sufficient to create a fact issue as to pretext under the circumstantial evidence test.   When an employer's remarks "are submitted as evidence of pretext, but are not direct evidence of discrimination because they are either too remote in time or too attenuated, they may provide circumstantial evidence that, when read in conjunction with the entire record, show a decisionmakers' discriminatory attitude." Dorrego v. Pub. Health Tr. of Miami Dade Cty., 293 F. Supp. 2d 1274, 1284 (S.D. Fla. 2003) (citing Ross v. Rhodes Furniture, Inc., 146 F.3d 1286, 1291-92 (11th Cir. 1998)).   "However, under the circumstantial evidence standard, without additional persuasive evidence of pretext, a derogatory remark, standing alone, is insufficient to create an issue of fact on pretext." Dorrego, 293 F. Supp. 2d at 1284 (citing Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1230 (11th Cir. 2002); Rojas v. Florida, 285 F.3d 1339, 1343 (11th Cir. 2002)).   Here, even viewing the facts in the light most favorable to Plaintiff, and assuming that Mr. Guess's comment about "diversity" is considered a derogatory remark, it is not direct evidence of sex discrimination because it was not about women.   In the absence of additional persuasive evidence

of pretext other than this one comment, Plaintiff has not met her burden of providing evidence of derogatory remarks about women *and* additional persuasive evidence in order to create an issue of fact on pretext.

Plaintiff has failed to come forward with any competent evidence to show that Defendants' decision to select Mr. Boorman, rather than Plaintiff, was based on gender animus or an intent to deny women the opportunity to be considered for the Construction Manager position.  See Springer, 509 F.3d at 1350 (affirming district court's grant of summary judgment where employee failed to show that employer's proffered reason for promoting coworker instead of employee was pretextual).  Accordingly, Plaintiff's failure-to-promote claims—both under Title VII and Section 1983—fail as a matter of law.

## B.  Plaintiff's Sex Discrimination Claim Against Mr. Guess (Count One)

In Count One of her Complaint, Plaintiff contends that Mr. Guess, in his individual capacity, discriminated against her on the basis of her sex, in violation of Section 1983.  [Compl. ¶¶ 24-34].  To establish liability against an individual under Section 1983, a plaintiff must prove "(1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under color of state law."  See Holmes v. Crosby, 418 F.3d 1256, 1258 (11th Cir. 2005); Keaton v. Cobb Cty., 545 F. Supp. 2d 1275, 1316 (N.D. Ga. 2008).  For the reasons stated

above, Plaintiff cannot establish that her constitutional rights were violated by either the County or Mr. Guess.  Accordingly, this claim fails as a matter of law.[3]

## IV.   CONCLUSION

For the foregoing reasons, I **RECOMMEND** that Defendants' Motion for Summary Judgment [Doc. 72] be **GRANTED**.

**SO REPORTED AND RECOMMENDED**, this 23rd day of January, 2018.

Catherine M. Salinas
United States Magistrate Judge

---

[3]  Plaintiff's Section 1983 claim against Mr. Guess fails on the additional basis that Mr. Guess was not the final decisionmaker with respect to the hiring decision for the Construction Manager position; the undisputed evidence is that Mr. Hoskins was the final decisionmaker [Hoskins Decl. ¶¶ 3, 9; Bailey Decl. ¶¶ 6-7; Guess Dep. 70-71].  See Kamensky v. Hillsborough Cty., 148 F. App'x 878, 879 (11th Cir. 2005) (holding that the terminated employee's supervisor could not be held individually liable under Section 1983 because the supervisor was not the official decisionmaker with respect to the termination decision); Quinn v. Monroe Cty., 330 F.3d 1320, 1327-28 (11th Cir. 2003) (holding that an individual is liable under Section 1983 when he is the official decisionmaker).

34