# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Bette Conaway,

                     Plaintiff,         Case No. 1:16-cv-01418

v.                                   Michael L. Brown
                                        United States District Judge

Gwinnett County, Georgia
and Grant Guess, individually,

                     Defendants.

_____/

## OPINION & ORDER

Plaintiff Bette Conaway claims Defendant Grant Guess refused to promote her to a better position with Gwinnett County because she is a woman. She sued Defendant Guess and Defendant Gwinnett County for discrimination. The Magistrate Judge recommends summary judgment for Defendants. (Dkt. 101.) Plaintiff filed objections to the Magistrate Judge's recommendation. (Dkt. 105.) The Court overrules those objections and adopts the Magistrate Judge's recommendations.

## I.    Background

In 2013, the Gwinnett County Parks and Recreation Department wanted to hire someone for the position of Construction Director. (Dkt. 69 at 56:6–13.) Defendant Grant Guess (Division Director for the Project Administration Section) was responsible for interviewing candidates and recommending someone to his supervisor, Phillip Hoskins (Director of Community Services Development). (Dkt. 61 at 33:13–17.) Guess advertised the job and interviewed about six candidates. (Dkt. 69 at 145:19–146:19.) Plaintiff applied for the job and interviewed with Guess. (*Id*. at 145:19–146:19.) At the time, she had been working for the County for more than twenty years and was a "Planner III," a role in which she coordinated the work of contractors, managed projects, and handled associated paperwork. (Dkt. 71 at 86:4–87:15, 99:16–100:19, 112:13–18:9.)

Guess and his supervisor offered the position to a man. (Dkt. 69 at 145:23–146:2.) When he turned it down, they offered the job to another man, someone who had not interviewed for the position but someone Guess knew from other county projects. (*Id*. at 147:6–23.) This second

man also turned it down. (*Id.* at 148:2–7.) Guess then left the spot open. (*Id.* at 149:1–4.)

The next year, he reposted the position. (*Id.* at 317–18.) In the posting, he stated the minimum qualifications: (1) a bachelor's degree in construction management, civil engineering, landscape architecture, or closely related field; (2) three years of construction management experience; and (3) a valid driver's license. (*Id.*) He interviewed six candidates, including Plaintiff and a man named Glen Boorman. (*Id.* at 192:10–193:7.) Boorman had applied for the position in 2013 but had not been selected for an interview. (*Id.* at 148: 8–17, 193: 2–6.) Boorman had extensive experience in golf course construction. (*Id.* at 239:13–19.) Guess selected Boorman, who accepted the offer, and Hoskins approved this decision. (Dkt. 61 at 34:7–35:18.)

Plaintiff sued, alleging she had not received the promotion because she is a woman. (Dkt. 1.) She brought this suit under both Title VII and the Equal Protection Clause of the 14th Amendment. (*Id.*) After discovery, Defendants moved for summary judgment, which the Magistrate Judge recommended granting. (Dkt. 101.) Applying the three-part framework outlined in *McDonnell Douglas Corp. v. Green*, 411

U.S. 792 (1973), the Magistrate Judge found that Plaintiff brought a prima facie case of failure-to-promote discrimination and that Defendants articulated a legitimate, nondiscriminatory reason for not hiring Plaintiff. (*See* Dkt. 101 at 16–17.) The Magistrate Judge then found that Plaintiff failed to show Defendants' articulated reason for hiring Boorman, his qualifications, was mere pretext. (*Id.* at 17–33.)

Plaintiff objected to the Magistrate Judge's report and recommendation ("R&R") on three bases, arguing the Magistrate Judge applied the wrong standard for pretext, disregarded compelling evidence of pretext, and improperly construed several critical facts. (Dkt. 105.) When viewed all together, these objections protest the Magistrate Judge's finding that Defendants' justifications for hiring Boorman were not pretextual.

## II.  Standard of Review

When a party files objections to an R&R, the district court must review de novo any part of the Magistrate Judge's disposition that is the subject of a proper objection. *See* FED. R. CIV. P. 72(b); 28 U.S.C. § 636(b). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to." *Marsden v. Moore*,

847 F.2d 1536, 1548 (11th Cir. 1988).  If an objection fails to identify the specific findings or a specific basis for the objection, a court need not consider it.  *See id.*

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).

A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case."  *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The party moving for summary judgment bears the initial burden of showing a court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  A moving party meets this burden merely by " 'showing' — that is, pointing out to the

district court — that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. The movant, however, need not negate the other party's claim. *Id.* at 323. In determining whether the moving party has met this burden, a court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the movant has adequately supported its motion, the nonmoving party then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, there is no "genuine [dispute] for trial" when the record as a whole could not lead a rational trier of fact to find for the nonmoving party. *Id.* But "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. The court, however, resolves all reasonable doubts in the favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

## III.  Analysis

### A.     Consideration of the facts

Plaintiff argues the R&R does not consider facts or that it construed facts in a light inappropriately benefitting Defendants.  In her objections, Plaintiff outlines three facts she contends the Magistrate Judge ignored or misconstrued: long established gender bias, and the denial of a promotion because of her gender in both 2013 and 2014.  The Court considers the relevancy of these three assertions below.

### 1.     Long-established gender bias

Plaintiff alleges there was a long-established gender bias in the Gwinnett County Parks and Recreation Department.[1]  To support this claim, Plaintiff points to the testimony of her coworker, Rex Shruder, and to comments made by two contractors.  Shruder testified that a former boss did not assign Plaintiff large projects because Plaintiff is a woman. (Dkt. 64 at 28:7–13.)  This testimony is about a former supervisor

---

[1] Defendants filed a notice of objection to this claim of pervasive gender bias, to which Plaintiff did not respond.  (Dkt. 97.)  Local Rule 7.1(B) provides that "[f]ailure to file a response shall indicate that there is no opposition to the motion."  Since Plaintiff failed to respond to Defendants' Notice of Objection, the Court treats it as unopposed.  *See Welch v. Delta Air Lines, Inc.*, 978 F. Supp. 1133, 1136 (N.D. Ga. 1997).

unrelated to the hiring decision at issue and is thus irrelevant. *Holifield v. Reno*, 115 F.3d 1555, 1563–64 (11th Cir. 1997) ("The biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case.").

The contractors' statements also do not show pervasive gender bias. One contractor told Plaintiff she didn't know what she was doing because she "was just a girl." (Dkt. 71-1 at 26:16–27:1.) Plaintiff admits, however, that her supervisor stepped in and helped her during this incident. (*Id.* at 26:16–27:1.) The other contractor told Plaintiff he refused to hire qualified women because he was "not hiring a girl." (Dkt. 61 at 26:8–15.) The contractor that made this comment was not under Guess's command, was not involved in the decision at issue, and was demoted. (*Id.*) Since "comments by non-decisionmakers do not raise an inference of discrimination," Plaintiff has not alleged sufficient facts to show a long-established gender bias. *See Mitchell v. USBI Co.*, 186 F.3d 1352, 1355 (11th Cir. 1999).

### 2. Defendants denied Plaintiff promotion because of gender in 2013

Plaintiff claims Defendants did not promote her in 2013 because of her gender. During that cycle, Defendants interviewed around six

candidates, one of whom was Plaintiff. Guess offered the job to a male candidate that interviewed and a male candidate that did not interview. After both candidates turned down the job offer, Guess closed the pool. As the Magistrate Judge put it, "[t]here is nothing unusual or suspect, however, about the fact that an employer's lead candidates for a position are both men, unless there is additional evidence that female applicants were excluded from consideration." (Dkt. 101 at 30.) Guess considered female candidates, as he interviewed Plaintiff in both 2013 and 2014.

Plaintiff argues Guess should have stayed within the 2013 pool, of which Boorman was not a part, but the decision to not stay within the pool does not show gender discrimination for three reasons. First, there were other men within the pool. Second, after Guess offered the position to two candidates, he learned the advertisement was incorrect. (Dkt. 69 at 142:3–16.) Third, Guess, as the official in charge of hiring, was entitled to close the position and begin the hiring process again. *Redd v. UPS*, 615 F. App'x 598, 604 (11th Cir. 2015) ("[A] plaintiff is not allowed to recast the employer's reason or substitute his business judgment for the employer's judgment.").

### 3. Defendants denied Plaintiff promotion because of gender in 2014

Plaintiff claims Guess also denied her a promotion in 2014 because of her gender. She bases this conclusion off an exchange she had with Guess during her interview with him in 2014. During the interview, Guess and Plaintiff discussed the growing diversity within the County, focusing on economic, racial, and ethnic diversity. (Dkt. 71-2 at 15:20–17:17.) Guess then abruptly switched the topic. (*Id.*) Plaintiff understands this exchange to be evidence that she was not promoted because of her gender. The Court disagrees. Plaintiff brings no claim based on her socio-economic status, race, or ethnicity. This remark, and the fact that a man made it to a woman, does not show gender discrimination.

### B. Pretext for discrimination

#### 1. Applicable framework for Plaintiff's claims and the Magistrate Judge's findings

Plaintiff brings this claim under Title VII and the Equal Protection Clause. When plaintiffs bring these claims under the same factual basis, courts "employ the same elements and standards of proof to analyze both claims." *Cheatham v. DeKalb Cty., Ga.,* 682 F. App'x 881, 889 (11th Cir. 2017). A plaintiff can prove disparate treatment through either direct or

circumstantial evidence. *Id.* Plaintiff here does not bring direct evidence of gender discrimination, and so the Court, when analyzing her circumstantial evidence, applies the three-part framework outlined in *McDonnell,* 411 U.S. 792 (1973). *See Champ v. Calhoun Cty. Emergency Mgmt. Agency*, 226 F. App'x 908, 909–10 (11th Cir. 2007). Under this framework, a plaintiff must first make a prima facie case of discrimination. *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). If made, the defendant can provide legitimate, nondiscriminatory reasons for why it took the employment action. *Id.* Upon the defendant showing these reasons, the plaintiff can show defendants' reasons are pretextual. *Id.*

The Magistrate Judge concluded Plaintiff brought a prima facie case of failure-to-promote discrimination. A failure-to-promote prima facie case requires the plaintiff to establish "(1) she is a member of a protected class; (2) she was qualified and applied for the promotion; (3) she was rejected despite her qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004) (citing *Lee v. GTE Fl., Inc.*, 226 F.3d 1249, 1253 (11th

Cir. 2000)).  Defendants contested only Plaintiff's qualifications, arguing she did not have the leadership style Defendants preferred.  The Magistrate Judge found that Plaintiff had the objective qualifications for the job, which are all that a prima facie case require.  *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 769 (11th Cir. 2005) ("[T]o demonstrate that he was qualified for the position, a Title VII plaintiff need only show that he or she satisfied an employer's objective qualifications.").

The minimum qualifications for the job were (1) a bachelor's degree in construction management, civil engineering, landscape architecture, or a closely related field; (2) three years of related construction management experience; and (3) a valid driver's license.  (Dkt. 69 at 317–18.)  The Magistrate Judge accurately found that Plaintiff met these criteria, as Plaintiff has a degree in urban and environmental planning, has worked in a position that overlaps with the Construction Manager's duties, and has a driver's license.  (Dkts. 71 at 78:3–8, 112:13–115:25; 71-1 at 1:1–3:7, 96:15–20.)  Neither party objected to this portion of the Magistrate Judge's reasoning, and upon review, the Court finds Plaintiff established a prima facie case of failure-to-promote discrimination.

The Magistrate Judge also found Defendants offered legitimate, nondiscriminatory reasons for not promoting Plaintiff. "An employer's burden to articulate a nondiscriminatory reason for failing to promote an employee is a burden of production, not permission." *Vessels*, 408 F.3d at 769–70 (citing *Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Defendants state they selected Mr. Boorman because he was the most qualified candidate. (Dkt. 81-1 at 12–15.) Defendants point to his construction management experience, his experience with large-scale projects, experiences as a supervisor, and his communication and leadership skills. (Dkt. 69 at 243–244, 252–55, 265.) The Court agrees with the Magistrate Judge that Defendants met their "exceedingly light burden" of articulating a legitimate, nondiscriminatory reason for selecting Mr. Boorman.

Finally, the Magistrate Judge found Defendants' proffered reasons were not pretextual. Plaintiff objects to this finding. The Court, accordingly, analyzes de novo whether Defendants' reasons for hiring Boorman were pretextual.

### 2. Objections to the Magistrate Judge's findings regarding pretext

#### i. Objection to the standard of evaluating pretext

Plaintiff objects to the standard the Court applied when evaluating whether Defendants' articulated reasons for hiring Boorman were pretextual. The Magistrate Judge first cited *Vessels* for the standard that, to show Defendants' reasons were pretextual, Plaintiff must reveal "such weaknesses, implausibilites, inconsistencies, incoherencies, or contradictions in [Defendants'] proffered legitimate reasons for [their] action[s] that a reasonable factfinder could find them unworthy of credence." 408 F.3d at 771. The Magistrate Judge then found that when comparing Mr. Boorman's and Plaintiff's qualifications, Plaintiff had to show that the discrepancies were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Higgins v. Tyson Foods, Inc.* 196 F. App'x 781, 783 (11th Cir. 2006).

Plaintiff argues the standard discussed in *Higgins* applies only if there is no other evidence of discrimination except the difference in qualifications. She contends there is other evidence of discrimination,

making the Magistrate Judge's application of the *Higgins* standard incorrect. Plaintiff is correct that differences between two candidates' qualifications must be more distinct for cases that only compare qualifications than cases with other bases of pretext. *Vessels*, 408 F.3d at 772 ("[W]here the qualifications disparity is not the sole basis for arguing pretext, the disparity need not be so dramatic to support an inference of pretext."). It is not clear, however, that the Magistrate Judge missed or misapplied this distinction. In her analysis, the Magistrate Judge found that none of Plaintiff's evidence showed pretext. So, at that point, the only evidence of pretext was the difference in Plaintiff's and Boorman's qualifications, meaning *Higgins* would apply. Still, in its de novo review, the Court is aware and heeds the distinction between cases that only compare qualifications and cases that have other bases of pretext.

### ii. The decision not to interview Boorman in 2013

In 2013, Guess interviewed Plaintiff for the position and did not interview Boorman. Plaintiff argues these interview selections are an admission by Guess that Plaintiff was more qualified than Boorman. This argument fails for two reasons. First, Plaintiff admitted Boorman

was qualified.  (Dkt. 90 at ¶ 15.)  Second, Guess testified he did not interview Boorman in 2013 because there was a more "robust" pool and he did not know if Boorman's experience "would be directly portable." (Dkt. 69 at 235:10–36:3.)  Guess testified that he learned from the interview process and realized Boorman's experience was relevant.  (*Id.* at 236:4–8.)  Learning from an interview process raises no inference about potential gender discrimination.  *See Redd*, 615 F. App'x at 604 ("As long as the proffered reason is one that might motivate a reasonable employer . . . the employee cannot succeed by simply quarreling with the wisdom of that reason." (internal quotation marks and citations omitted)).  The Court thus dismisses this claim.

### iii.    Guess's criteria for hiring Boorman

Plaintiff claims Guess had criteria for the job search, he disregarded these criteria, and the departure from these criteria is evidence of pretext.  Gwinnett County's Human Resources Manager asked Guess "what were your requirements for the job (beyond what was listed on the job posting/ class specification)?  How did you determine what candidates to interview?" (Dkt. 70 at 197.)  Guess responded that he was looking for (1) an engineering license and experience;

(2) managerial experience, with specific experience over project managers or construction managers; (3) experience in overseeing parks or park-like projects; and (4) Gwinnett County experience or governmental experience. (*Id.*)

Plaintiff argues her qualifications judged by these standards are superior and that this superiority establishes pretext. *See Keaton v. Cobb Cty., Ga.*, 545 F. Supp. 2d 1275, 1292 (N.D. Ga. 2007) ("[A]n employer's deviation from the requirements of a job listing may be evidence of pretext.") (citing *Mohammed v. Callaway*, 698 F.2d 395, 400–01 (10th Cir. 1983)). She points to the fact that neither candidate had any engineering experience, both candidates had managerial experience, and she had more experience with the County and overseeing park-like projects. On her read, Guess strayed from his own criteria, and that deviation was evidence of pretext.

Plaintiff's argument fails on two accounts. First, her argument assumes these criteria were the only bases for hiring Boorman. In fact, Guess testified these criteria were not a finite list of reasons when deciding whom to recommend. (Dkt. 70 at 165:10–20.) Plaintiff even admits Guess used other criteria. (Dkt. 90 at ¶¶ 2–4.)

If Guess relied exclusively on those criteria, picking Boorman would not show disregard for the stated criteria. Boorman had experience with management and with overseeing park-like construction projects. (Dkt. 68 at 111.) Although Plaintiff concludes she was the stronger candidate, Guess may have preferred Boorman. Plaintiff does not get to "substitute [her] business judgment for that of the employer . . . [and] cannot succeed by simply quarreling with the wisdom of [the employer's] reason." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000); *see Damon v. Fleming Supermarkets of Fl. Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) ("We have repeatedly and emphatically held that a defendant may terminate an employee for a good or bad reason without violating federal law. We are not in the business of adjudging whether employment decisions are prudent or fair." (internal citations omitted)). The Court rejects this claim.

### iv. Boorman's and Plaintiff's relative qualifications

Plaintiff argues she was more qualified than Boorman, and the disparity between their qualifications could lead a jury to infer pretext. The Court disagrees. Plaintiff critiques each of Boorman's qualifications, arguing his golf-course development experience is irrelevant because

Gwinnett County is not building a golf course; he had no experience in projects that he would perform as Construction Manager; and he had no experience working for the government. These arguments, however, simply insert Plaintiff's evaluation into the decision, which Plaintiff cannot do. *Chapman*, 229 F.3d at 1030.

Furthermore, since this argument compares only the candidates' qualifications, Plaintiff faces a higher standard. Plaintiff must show the discrepancies between her qualifications and those of successful applicants were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Higgins*, 196 F. App'x at 783. It is undisputed that Boorman worked for twenty years in golf course design and construction, including projects that cost up to 15 million dollars. (Dkt. 68 at 9:13–18, 32:13–34:17.) Given Boorman's qualifications, a reasonable person could find him more qualified than her.

Plaintiff argues that she was more qualified because other employees considered her an excellent candidate. But the relevant question is not what other employees thought; it's what Guess thought.

*Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) ("[O]ur inquiry is limited to whether the employer gave an honest explanation of its behavior." (internal citations omitted)). This is especially true given Tina Fleming and David Clark, the leaders of the Operations and Management Division, thought Plaintiff was not a strong candidate. (Dkt. 90 at ¶¶ 25–26.) Guess wanted the Construction Manager to serve as a bridge with Fleming and Clark, and he took their opinion into account when he decided not to hire Plaintiff. (Dkt. 70 at 131:4–132:2.) For these reasons, the Court finds that whatever, if any, disparity between Boorman's and Plaintiff's qualifications shows no pretext for discrimination.

### v.    Supervisory and large-scale experience

Plaintiff argues Defendants justified their hiring Boorman on his supervisory and large-scale project experience, but both were irrelevant, making their use as a justification for hiring Boorman pretextual. First, Plaintiff contends the Construction Manager does little supervising, and Boorman hasn't supervised anyone since he began the position. Second, Plaintiff asserts the justification of large-scale project experience was pretextual both because Plaintiff had large-scale experience and

Boorman's experience was in designing golf courses, not parks. It is undisputed that Boorman had supervisory experience, and that being a supervisor was a part of the job. (Dkts. 69 at 311; 105 at 19–20.) It is also undisputed that Boorman had more large-scale project experience than Plaintiff. (Dkts. 90 at ¶ 8; 70 at 44:8–50:5.)

Both of Plaintiff's arguments seek to show Guess should have reviewed qualifications differently, but a "plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer." *Chapman*, 229 F.3d at 1030. Being a supervisor is a part of the Construction Manager job, even if a small part. Boorman worked on large projects, even if on golf courses. "Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions." *Id.* (quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991)). The Court, accordingly, will not reevaluate Guess's business decision to hire Boorman.

Plaintiff complains she did not have more large-scale construction experience because Guess assigned her work. But, even if she had more experience, Plaintiff would again be asking the Court to compare

Boorman's twenty years in the field to Plaintiff's increased experience. This comparison is not the Court's role. *Damon*, 196 F.3d at 1361 ("We are not in the business of adjudging whether employment decisions are prudent or fair." (internal citations omitted)).

### vi. Communication skills and ability to get along with others

Other people complained about Plaintiff's communication skills, and Defendants listed her communication skills as a reason for not hiring her. Although Plaintiff acknowledges these complaints, she argues the use of these complaints shows pretext either because the complaints were baseless or Guess didn't believe them at the time. For instance, Guess rated Plaintiff's communication skills highly on evaluations. (Dkt. 69 at 349–50.) Using the complaints as justification shows pretext, Plaintiff argues, because Guess's evaluations show he thought Plaintiff had strong communication skills. Guess, however, testified he didn't use the reviews in the hiring process. (Dkt. 70 at 137:3–10.) He also testified he wanted the Construction Manager to be a bridge to the Operations and Management division, and the leaders of that section, Clark and Fleming, both complained about Plaintiff's communication skills. (*Id.* at 131:4–132:2.)

Plaintiff has the obligation to meet Defendants' reasons "head on," and cannot "recast an employer's proffered nondiscriminatory reasons." *Chapman*, 229 F.3d at 1030. Plaintiff argues against the veracity of Guess's testimony and does not challenge Clark's and Fleming's concerns. Plaintiff thus confuses her burden, failing to challenge Guess's proffered reason, the concern about communicating with Fleming and Clark. Since Plaintiff has not met this reason head on, the Court dismisses this objection.

Plaintiff also cites positive accounts by her colleagues of her communications skills, which she claims show Guess did not honestly believe she had poor communication skills. Plaintiff may be a strong communicator, but the question here is whether Guess thought she had the right communication skills for the Construction Manager position. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d, 1253, 1266 (11th Cir. 2010) ("The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs, and to be blunt about it, not on reality as it exists outside of the decision maker's head." (internal citations omitted)). Other employees' opinions about her communications do not impact this question. *Palomino v. Concord Hosp. Enters. Co.*, 126 F. Supp. 3d 647,

656 (D.S.C. 2015) ("[T]he alleged opinions of other employees are not relevant and the court will not engage in such an inquiry.").

Plaintiff then challenges the use of five different discrete events that Defendants cited as examples of Plaintiff's poor communication. These five different examples are

> (1) in May 2013, a contractor complained to Mr. Guess that Plaintiff tried to discourage his company from bidding on a project; (2) in June and November 2013, Ms. Fleming and O&M section employees complained about Plaintiff's poor communication after Plaintiff scheduled asphalt resurfacing in parks for the same time that run/walk events were scheduled; (3) in April 2014, Ms. Fleming and Jim Cyrus complained that Plaintiff inappropriately yelled at Mr. Cyrus and another employee for allegedly not wearing a hard hat while work was being done at a softball complex; (4) on two prior projects, the Executive Director of the Gwinnett Environmental and Heritage Center complained to Mr. Guess about Plaintiff's behavior, claiming that Plaintiff did not keep him adequately informed, that she was rude to him and his staff, and that she argued with contractors;

(Dkt. 101 at 27–28 (internal citations omitted)) and (5) Plaintiff was the project manager for the relocation of a historical home that suffered water damage during the project. (Dkt. 71-1 at 33–42.)

Plaintiff complains that the list of examples in their position statement to the EEOC contained only two instances of poor communication, while at the summary judgment stage, Defendants list

five examples of poor communication. Plaintiff claims this growth could lead a jury to doubt their credible use as a reason for not hiring her. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1194 (11th Cir. 2004) (finding "inconsistent reasons allowed the jury to question his credibility"). A defendant, however, can "elaborate on its reasons for taking an employment action." *Keaton*, 545 F. Supp. 2d at 1305 (internal citations omitted). And, an "additional, nonconflicting statement is not evidence of pretext." *Id.* (citing *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1428 (11th Cir. 1998)). The two examples Defendants cited to before the EEOC depict Plaintiff's poor communication skills. The next three examples depict Plaintiff's poor communication skills. These examples are consistent, and thus the additional examples do not show pretext.

Plaintiff goes through each example and argues she was not at fault. But, as the Magistrate Judge stated, "while Plaintiff certainly has a different perspective on how to interpret these facts, she has not shown that any of these facts are untrue or could be a mere pretext for discrimination." (Dkt. 101 at 28.) Guess testified he didn't hire her because of concerns about whether her communication skills would make

her a good fit as Construction Manager.  Plaintiff presents no actual evidence to show this belief to be untrue.

Even if Plaintiff rebutted the communication skills justification, her claim would still fail.  She has the obligation to rebut every reason Defendants cite for not promoting her.  *See Crawford v. City of Fairburn,* 482 F.3d 1305, 1308 (11th Cir.2007). ("If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment.").  Plaintiff failed to rebut Defendants' justification that Boorman was more qualified.  The Court therefore dismisses this claim.

### vii. Convincing mosaic of circumstantial evidence

Plaintiff also argues that the Magistrate Judge did not consider the claim under the standard set out in *Smith v. Lockheed-Martin*, 644 F.3d 1321 (11th Cir. 2011).  In *Lockheed-Martin*, the court explained that the *McDonnell* presumption switching method is not the only way to prove gender discrimination: "establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the sine qua non for a plaintiff to survive a summary judgment motion in an employment discrimination case."  *Id.*  at 1328.  In addition to the

*McDonnell* framework, "[a] triable issue of fact exists in the record, viewed in the light most favorable to the plaintiff, presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.' " *Id.* (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 733 (7th Cir. 2011)).

"A 'convincing mosaic' may be shown by evidence that demonstrates, among other things, (1) " 'suspicious timing, ambiguous statements . . ., and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City*, 877 F.3d 1000, 1018 (11th Cir. 2017) (quoting *Silverman*, 637 F.3d at 733-34). Plaintiff fails to meet these different elements or otherwise present a convincing mosaic. First, Plaintiff does not point the Court to any suspicious timing or ambiguous statements. Second, Defendants did not treat similarly situated employees better than Plaintiff, as two male candidates were not chosen for the same reasons as Plaintiff. (Dkt. 90 at ¶ 27.) Third, for the reasons stated above, Defendants' reasons for choosing Plaintiff are not pretextual. Plaintiff does not present a "convincing mosaic," but asks the

Court to question Guess's business judgment. The Court refuses this invitation, and this objection is dismissed.

## C. Claim against Guess in his individual capacity

Plaintiff brings a 42 U.S.C. § 1983 claim against Guess, arguing that he discriminated against her because of her gender in his individual capacity. A plaintiff bringing a § 1983 claim must prove "(1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under color of state law." *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005). For the reasons stated above, Plaintiff has failed to establish that Defendants violated her constitutional rights. This claim is thus dismissed.

## IV. Conclusion

The Court **OVERRULES** Plaintiff's objections (Dkt. 105) and **ADOPTS** the Magistrate Judge's Report and Recommendation (Dkt. 101). The Court **GRANTS** Defendant's Motion for Summary Judgment (Dkt. 72).

**SO ORDERED** this 25th day of June, 2019.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE